UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAVID CROWDER,                          )
                                        )
                Plaintiff,              )
                                        )
        v.                              )       No. 4:06 CV 1256 DJS
                                        )                          DDN
MICHAEL J. ASTRUE,[1]                   )
Commissioner of Social Security,        )
                                        )
                Defendant.              )

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

        This action is before the court for judicial review of the final
decision of defendant Commissioner of Social Security denying the
application of plaintiff David Crowder for disability insurance benefits
under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401,
et seq.  The action was referred to the undersigned United States
Magistrate Judge for review and a recommended disposition under 28
U.S.C. § 636(b).  For the reasons set forth below, the undersigned
recommends that the decision denying benefits be affirmed.


**I.  BACKGROUND**

        Plaintiff David Crowder was born on March 7, 1956.  (Tr. 21.)  He
is 5'8" tall with a weight that has ranged from 120 pounds to 127
pounds.  (Tr. 56, 102.)  He has completed twelve years of school, and
has worked as a truck driver, dispatcher, and warehouse worker.  (Tr.
11.)  From June 1989 to April 1999, Crowder was a local and over-the-
road truck driver for a number of different companies.  From May 1999
to October 1999, he worked as a groundskeeper.  From October 1999 to
January 2001, he returned to driving a truck.  From January 2001 to
September 2002, he worked as a dispatcher.  From September 2002 until

---

[1]Jo Anne B. Barnhart was the original defendant.  Michael J. Astrue
became the Commissioner of Social Security on February 12, 2007.
Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure,
Michael J. Astrue is substituted as defendant in this suit.  42 U.S.C.
§ 405(g).

November 2004, he worked as a truck driver. (Tr. 61-62, 103.) His last job was with Murdon Concrete Products, where he worked as a truck driver and in the warehouse. (Tr. 96, 293.)

On November 5, 2005, Crowder applied for disability benefits, alleging he became disabled on May 27, 2004, as a result of a lower back injury and problems with his right arm. (Tr. 11, 21, 34.) The application was denied on February 7, 2005. (Tr. 11.) Following a hearing on December 6, 2005, the ALJ denied benefits on February 21, 2006. (Tr. 11, 20.) On June 22, 2006, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3.)

## II.  MEDICAL HISTORY

On January 17, 1995, David Crowder was unloading large water pipes with another employee. According to Crowder, the other employee either slipped or let go of his end of the pipe. As the pipe dropped it dragged Crowder's arm down. The other pipes on the truck also rolled off, striking Crowder on the right elbow and forearm. (Tr. 256.)

On April 30, 1996, Raymond Cohen, D.O., examined Crowder. Dr. Cohen noted that range of motion in the right arm was reduced to 20% of what would be normal. He also noted there was some sensory loss over the ulnar innervated aspect of his right arm. [2] Dr. Cohen did not find any abnormalities of the spine. [3] (Tr. 256-58.)

_____

[2]The ulnar nerve is in the elbow. Stedman's Medical Dictionary, 1663 (25th ed., Williams & Wilkins 1990) (1911). Innervation is the supply of nerve fibers functionally connected with a part. Id., 786.

[3]The human spinal column consists of thirty-three vertebrae. There are seven cervical vertebrae (denoted C1-C7), twelve thoracic vertebrae (denoted T1-T12), five lumbar vertebrae (denoted L1-L5), five sacral vertebrae (denoted S1-S5 and fused together into one bone, the sacrum), and four coccygeal vertebrae (fused together into one bone, the coccyx). The cervical vertebrae form part of the neck, while the lumbar vertebrae form part of the lower back. The sacrum is immediately below the lumbar vertebrae. Stedman's Medical Dictionary, 226, 831, 1376, 1549, 1710, Plate 2.

On May 27, 2004, Crowder suffered a sharp pain in his lower back and the right side of his abdomen while he was attempting to break up concrete forms. The pain went down to his legs. He came under the care of Dr. Hugh Schuetz, D.O. (Tr. 126.) Crowder visited Dr. Schuetz at Forest City Family Practice. Crowder saw Dr. Schuetz for the back and abdominal injury as well as for two herniated disks.[4] (Tr. 105.) Dr. Schuetz x-rayed Crowder's back. (Tr. 107.)

On June 8, 2004, Crowder visited Dr. Andrew Wayne, M.D., at Orthopedic & Sports Medicine, Inc. The visit was to treat his back injury and receive medicine. (Tr. 105.) During the visit, Dr. Wayne performed an MRI on Crowder's back. (Tr. 107.) A physical examination revealed his lumbar motion was moderately restricted for flexion, markedly restricted for extension, and moderately restricted for sidebending. Most of his pain came from extensions. Crowder was able to walk and squat without any obvious difficulty. X-rays of the lumbosacral spine revealed no acute abnormalities and no significant degenerative abnormalities. Alignment appeared to be within normal limits, though there was some evidence of lower abdominal aortic calcifications. (Tr. 149-51.)

Dr. Wayne diagnosed Crowder with post abdominal muscle strain and post lumbar strain stemming from the work-related injury. Dr. Wayne prescribed Bextra and Ultracet, and advised Crowder to participate in physical therapy.[5] He believed Crowder was capable of "taking part in light duty with no lifting over 20 pounds and no pushing or pulling over 40 pounds." (Tr. 150-51.) Two days later, Crowder went to the Phelps County Regional Medical Center for physical therapy. (Tr. 105-06).

_____

[4]A herniated disk is a protruded or ruptured disk. The protrusion will compress the nerve root or the cauda equina. Stedman's Medical Dictionary, 260, 455 (25th ed., Williams & Wilkins 1990) (1911). The cauda equina is a collection of nerves below the end of the spinal cord, which travel down the thecal sac and go to the muscles and skin. The thecal sac is the tube which holds the spinal cord and spinal fluid. http://www.neurosurgerytoday.org/what/patient_e/tethered.asp. (Last visited December 29, 2007.)

[5]Bextra is used to treat pain and loss of function. Ultracet is also used to treat pain, particularly short term pain. http://www.webmd.com/drugs. (Last visited December 30, 2007).

On June 23, 2004, Robin Pickup, a physical therapist with the Phelps County Medical Center, indicated Crowder was doing better. His abdominal pain had decreased, but he still had pain in his back and lower back. Crowder rated the pain at 3/10. Pickup noted that Crowder was tolerating increased range of motion. (Tr. 239.)

On June 25, 2004, Dr. Wayne saw Crowder for a follow-up regarding his abdominal strain and lumbar pain. Dr. Wayne had Crowder participate in physical therapy. According to the therapy notes, Crowder showed improvement in his abdominal symptoms, but noted his back pain was only slightly better. Dr. Wayne diagnosed him with a post lumbar strain and post abdominal strain, both of which, he believed, were showing improvement. Dr. Wayne told Crowder he could perform light work, which meant no lifting over twenty pounds, and no pushing or pulling over forty pounds. (Tr. 147-48.)

On July 2, 2004, Pickup indicated Crowder had been working light duty. The therapist noted Crowder was no longer complaining of abdominal pain, but was still having back and lower back pain. (Tr. 237.)

On July 9, 2004, Dr. Wayne saw Crowder for a follow-up regarding his abdominal strain and lumbar pain. A physical examination revealed Crowder's abdomen was minimally tender. Crowder had continued tenderness in his right lumbosacral and gluteal distribution.[6] Dr. Wayne diagnosed Crowder with a post abdominal strain, which had almost completely resolved, and a post lumbar strain. (Tr. 145-46.)

On July 14, 2004, Dr. Wayne saw Crowder for a follow-up regarding his complaints of back pain. Crowder said he had not noticed any improvement in his back. However, he did not have any significant complaints about his abdominal region. An MRI performed on July 12, revealed a small central disk protrusion at L4-5, and a left paramedian disk protrusion or herniation at L5-S1, which abuts the left S1 nerve root sheath. A physical examination revealed Crowder's lumbar motion was still moderately restricted. He had continued tightness in the muscles in his lower back and straight leg raises caused some pulling

---

[6]Gluteal relates to the buttocks. Stedman's Medical Dictionary, 658.

sensation in his lower back, more so at the lower left extremity.  His
reflexes and sensory were normal.  His gait was slow and deliberate.
Dr. Wayne diagnosed Crowder with post lumbar strain, and a small disk
herniation at L5-S1, as well as a central disk protrusion at L4-5.  Dr.
Wayne believed there was mild improvement in the lumbar strain.  Dr.
Wayne believed the herniated disk at L5-S1 accounted for a significant
portion of Crowder's complaints.  He recommended a series of epidural
steroid injections to help.  (Tr. 143-44.)

On July 22, 2004, Dr. Wayne saw Crowder for his first lumbar
epidural steroid injection.  Crowder said he had not improved since his
last visit.  A physical examination revealed Crowder continued to have
moderately restricted motion, and his gait was slow and deliberate.
Straight leg raises caused some lower back pain.  Dr. Wayne diagnosed
Crowder with a small herniated disk at L5-S1, and a small central disk
protrusion at L4-5.  He advised Crowder to take the next two days off
work, but told him he could participate in sedentary duty if it was
available.  Dr. Wayne renewed the Darvocet prescription.[7]  (Tr. 141-42.)

On August 5, 2004, Dr. Wayne saw Crowder for his second lumbar
epidural steroid injection.  Crowder noted some improvement since the
initial injection, though still reported having pain toward the end of
the workday.  A physical examination revealed Crowder's range of motion
was only mildly limited.  His gait was slow but not antalgic.[8]  Motor
testing revealed some mild generalized weakness in the lower right
extremity.  Dr. Wayne believed Crowder had radiographic evidence of a
small disk herniation at L5-S1, and degenerative disk disease at L4-5.
Crowder was to remain off work until the following day, but then could
return to light duty.  (Tr. 139-40).

On August 26, 2004, Dr. Wayne saw Crowder for his final lumbar
epidural steroid injection.  Crowder stated that he was walking better
and his pain had mildly improved, but still had significant pain with

---

[7]Darvocet is a drug with a narcotic component and is used to treat
mild to moderate pain.  http://www.webmd.com/drugs.  (Last visited
December 30, 2007.)

[8]An antalgic gait refers to a posture or gait assumed in order to
avoid or lessen pain.  See Stedman's Medical Dictionary, 65, 91.

prolonged standing and walking.  Dr. Wayne found Crowder's gait slow, but not antalgic.  He noted his motor testing was improved.  Straight leg raises caused some pulling in the lower back at the endpoint, but was negative on the left.  Dr. Wayne diagnosed Crowder with status post lumbar strain with a small disk herniation at L5-S1 and spondylosis at L4-5.[9]  He told Crowder he could return to work  the next day, but with limited duty.  He also advised Crowder to alternate between sitting and standing, and to avoid walking more than half the time.  He prescribed Ambien to help him sleep.  (Tr. 137-38.)

On September 10, 2004, Dr. Wayne saw Crowder for a follow-up. Crowder noticed some mild improvements and decreased pain and stiffness. Still, he reported increased pain with any prolonged sitting, standing, walking, or bending.  Dr. Wayne found Crowder's gait was slow, and motor testing revealed some mild generalized guarding in the lower extremities, more so on the right.[10]  Dr. Wayne did not find any weakness in the area.  Crowder exhibited some limited range of motion.  Dr. Wayne diagnosed Crowder with a post lumbosacral strain with a small disk herniation at L5-S1, and disk degeneration at L4-5.  Overall, Dr. Wayne believed Crowder was improving and recommended work conditioning for plaintiff.  He prescribed Flexeril and advised Crowder to stop taking Darvocet.[11]  Dr. Wayne believed Crowder could increase his work activity, allowing him to lift up to fifteen pounds.  In three weeks, he hoped to release him to full duty.  (Tr. 135-36.)

From September 14, 2004, to September 24, 2004, Crowder participated in physical therapy.  The notes indicate Crowder showed improved flexibility and strength toward the end of the therapy session. (Tr. 210-26.)

---

[9]Spondylosis is stiffening or fixation of a joint as the result of a disease process, affecting the vertebrae.  Stedman's Medical Dictionary, 87, 1456.

[10]Guarding is characterized by a spasm of muscles to minimize motion or agitation of sites affected by an injury or disease. Stedman's Medical Dictionary, 674.

[11]Flexeril is a muscle relaxant and is used with rest and physical therapy to decrease muscle pain and spasms. http://www.webmd.com/drugs. (Last visited December 30, 2007.)

On September 30, 2004, Dr. Wayne saw Crowder for a follow up on his lower back and lower extremity complaints. Crowder noted his legs felt stronger and he was walking better. Dr. Wayne found Crowder's gait was slightly slow, and motor testing revealed some mild to moderate generalized weakness in the right lower extremity. Crowder had essentially normal strength in the left lower extremity. He found Crowder could walk without any significant difficulty, but had some limited range of motion, with pain mainly coming from extensions. Dr. Wayne diagnosed Crowder with lower back pain with right lower extremity radiating symptoms and generalized deconditioning in the lower trunk and in the right lower extremity. Dr. Wayne also diagnosed Crowder with a small disk herniation at L5-S1, and degenerative disk disease at L4-5. He advised Crowder to have a surgical consultation because he did not seem to be having any significant improvement. Dr. Wayne suggested a light duty for work. He prescribed him Celebrex, increased his dosage of Flexeril, and suggested Crowder stop taking Darvocet.[12] (Tr. 133-34.)

On October 5, October 15, and October 21, 2004, Crowder participated in physical therapy. The notes indicate the therapy provided only minimal pain relief. (Tr. 200-09).

On October 25, 2004, Crowder visited Dr. James Coyle, M.D., of Midwest Spine Surgeons. Dr. Coyle diagnosed him with chronic lumbar sprain with bilateral lower extremity radicular symptoms.[13] Coyle did not see any evidence of neurologic deficits or nerve root impingement on an MRI. The MRI did show Crowder was suffering from degenerative disk disease at L4-5, and L5-S1. The MRI also revealed mild central protrusion or herniation, but no evidence of nerve root compression. Finally, the MRI showed a central disk protrusion with degenerative changes at L4-5. In the absence of neurological deficits and nerve root impingement, Dr. Coyle recommended pursuing a conservative line of treatment, and against surgery. (Tr. 192-93.) During the visit,

---

[12]Celebrex is an anti-inflammatory drug used to treat arthritis. http://www.webmd.com/drugs. (Last visited December 30, 2007.)

[13]Radiculopathy is a disease of the spinal nerve roots. Stedman's Medical Dictionary, 1308.

Crowder indicated walking, standing, sitting, and exercise aggravated the pain.  (Tr. 197.)

On November 2, 2004, Crowder went to Pro Rehab for a functional capacity evaluation conducted by Steven Brunjes, a registered and licensed occupational therapist.  (Tr. 106, 175.)  Crowder indicated his abdominal pain to be very low, indicating only mild discomfort.  (Tr. 156.)  On the other hand, he indicated his lower back pain was very high.  The pain limited him to sitting and standing for no longer than a half-hour and prevented him from doing even light duties.  He said he could only lift very light weights and could walk no more than a quarter-mile because of the pain.  (Tr. 160.)

In his evaluation, Brunjes noted that Crowder's subjective complaints were "out of proportion with displayed function . . . indicating symptom magnification."  In his professional opinion, Brunjes believed Crowder was employable on a full-time basis in at least the sedentary work demand level.  (Tr. 175.)

On November 9, 2004, Dr. Wayne examined Crowder after his visit with Dr. Coyle.  He noted his gait was slow and deliberate, with some limited range of motion.  Dr. Wayne's diagnosis was the same as from September 30, 2004.  Dr. Wayne showed Crowder a number of stretches and exercises, and renewed his Darvocet prescription.  Dr. Wayne also believed that Crowder was showing "some evidence of symptom magnification and self-limiting behavior."  Dr. Wayne believed Crowder would be able to lift up to forty pounds and was capable of doing more than his functional capacity evaluation suggested.  (Tr. 131-32.)

On December 7, 2004, Crowder completed a function report for the Social Security Administration.  He indicated he had trouble sleeping, and sitting or standing for any prolonged period.  He was able to feed himself, drive his car, and shop for groceries, but stated that after fifteen minutes the pain would start.  He indicated he could walk for no more than ten minutes before the pain sets in.  (Tr. 87-94.)

On December 14, 2004, Crowder visited Dr. Jerome Levy, M.D. Crowder stated he was suffering from lower back pain, which would creep down into his right leg.  He reported that after sitting for fifteen to twenty minutes the pain would worsen.  After walking an eighth of a

mile, he reported having similar pain. In his evaluation, Dr. Levy found Crowder had a normal gait and was able to walk without difficulty. Dr. Levy found no obvious deformity in plaintiff's back, no tenderness in the lower lumbar area, and found the lumbodorsal curvature to be normal. There was no tenderness at the sciatic notch and Crowder exhibited good range of motion.[14] He exhibited only a small loss of motion in his extensions, but no loss of range in flexion, lateral bending, or rotation. (Tr. 126-28.)

Dr. Levy noted an obvious scar on Crowder's right elbow and found the area to be sensitive. He noted no joint instability, full range of motion in the joints, and no discomfort from moving the joints. Dr. Levy diagnosed Crowder with herniated disks at L4-5 and L5-S1, lumbosacral strain with radiculopathy, right ulnar nerve transposition, and ulnar neuropathy in the right hand.[15] Dr. Levy then concluded that Crowder had a permanent partial disability amounting to thirty percent "of the man as a whole due to his back" and twenty percent "of the right upper extremity at the elbow." The elbow damage created a hindrance to employment, Dr. Levy concluded. (Tr. 128-29.)

On February 7, 2005, L. Masek, a medical consultant, completed a physical residual functional capacity assessment for Crowder. Masek noted Crowder had been diagnosed with a small disc herniation at L4-5 and L5-S1, and nerve compression in his right ulnar nerve. According to the assessment, Crowder could occasionally lift or carry twenty pounds, and could frequently lift ten pounds. He could stand, walk, or sit, with normal breaks, for about six hours in an eight-hour workday. He had an unlimited ability to push or pull. (Tr. 76-83.)

Masek reached these conclusions by looking to Crowder's medical history, the observations of other doctors, and Crowder's own subjective complaints. (Tr. 77-78.) Masek also noted that Crowder's symptoms

---

[14]The sciatic notch is one of either two notches on the dorsal border of the hip bone. Miriam-Webster's Online Dictionary, http://medical.merriam-webster.com/medical/m edical?book=Medical&va=sc iatic+notch. (Last visited December 30, 2007).

[15]Transposition is the condition of being transposed to the wrong side of the body. Stedman's Medical Dictionary, 1625. Neuropathy is any disorder affecting any segment of the nervous system. Id., 1048.

appeared to be exaggerated. The constant pain alleged, according to Masek, was "beyond what would be expected from the objective findings." He considered Crowder only "partially credible." (Tr. 81.)

As of February 23, 2005, Crowder was taking Darvocet to treat his pain, Flexeril to treat his muscle spasms, and Ambien to sleap. Dr. Schuetz prescribed each of the medications. (Tr. 66.)

On April 14, 2005, Dr. Schuetz completed a disability evaluation for the Missouri Department of Social Services. In the report, Dr. Schuetz indicated Crowder had degenerative osteoarthritis and disc disease at L4-5 and L5-S1. He also reported that Crowder suffered from lower back pain and a gait disorder. He did not believe plaintiff was capable of working, but noted further medical investigation would be required. (Tr. 56-57, 259-60.)

That same day, Dr. Schuetz also completed a physical residual functional capacity assessment form. He indicated Crowder could only sit, stand, walk, or work for one hour in an eight-hour day, due to pain in his lower back, right leg, and right hip. Dr. Schuetz stated Crowder could occasionally lift up to twenty pounds and occasionally carry up to ten pounds. He stated Crowder could not use his right hand in repetitive actions because of the ulnar nerve surgery he had in 1995. Finally, Dr. Schuetz noted Crowder had been undergoing physical therapy for the past five months, but that it had proved unhelpful. He concluded that Crowder should not work for medical reasons, but added "needs further evaluation." (Tr. 110-14, 261-65.)

On May 31, 2005, Timonthy Lalk, a vocational rehabilitation counselor, evaluated Crowder. Lalk reviewed Crowder's medical records and noted his personal observations. Lalk reported that Crowder appeared to be in pain when walking, standing, sitting, and changing positions. Crowder told Lalk that he could not lift anything heavier than five pounds because of concerns about hurting his back. Crowder stated that standing and sitting also increased his back pain. After fifteen or twenty minutes of sitting, his lower back pain would increase. After thirty-five minutes of driving, his lower back pain would reach the point where he needed to rest. He also told Lalk he could only walk one block before needing to sit down, and that he had

problems breathing. He admitted to smoking. Based on these observations and Crowder's own complaints, Lalk believed Crowder could not "secure and maintain employment in the open labor market nor could he compete for any position." At the same time, if one credited the opinions of Dr. Wayne, Lalk noted that Crowder could perform "almost the full range of jobs which are considered at the medium level of physical exertion (lifting a maximum of fifty pounds)." (Tr. 115-25.)

On June 13, 2005, Crowder visited the Forest City Family Practice Clinic, complaining of shortness of breath, pain in his right leg, occasional pain in his left leg, and back pain. He was diagnosed with chronic back pain and a degenerative lumbar disk. He was also noted as having an abnormal gait. (Tr. 273-74.)

On July 11, 2005, Crowder returned to the Forest City Family Practice Clinic, complaining of pain in his lower back and in both legs. He said his breathing was better. He was diagnosed with back pain and degenerative osteoarthritis. The notes again indicate an abnormal gait. (Tr. 272-72A.)

On September 1, 2005, Dr. Schuetz completed a radiology report of Crowder's right elbow. The report showed the bones and joints of the right elbow were normal, without any fracture or other abnormality. (Tr. 286.)

As of November 3, 2005, Crowder was taking Vicodin to treat his pain, Neurontin to treat his nerve pain, and Ambien to sleep. Dr. Schuetz prescribed each of the medications. (Tr. 60.)

On February 8, 2006, Crowder visited the Anesthesiology Pain Clinic. He was diagnosed with chronic lumbar radiculopathy. Crowder reported severe lower back pain, 10/10. On examination, Crowder was able to perform heel and toe standing. He noted positive straight leg raising on the right at 30 degrees, and on the left at 70 degrees. The clinic recommended heavy pain medication. (Tr. 266-68.)

As of March 21, 2006, Crowder was taking Vicodin, Kadian, and Ambien.[16]

_____

[16]Kadian is used to relieve moderate to severe pain that requires strong, long-lasting narcotic pain medication. http://www.webmd.com/
(continued...)

## Testimony at the Hearing

At the hearing on December 6, 2005, Crowder described his recent work experience with Murdon Concrete Products. In particular, Crowder explained how he was injured while tearing down concrete forms. While he was breaking the concrete, he felt a tear in his stomach, which went around to his back. He said he felt the pain instantly. Crowder noted that the doctors had diagnosed him with two herniated disks, one at L4-5, and one at L5-S1. (Tr. 291-95.)

Crowder explained that the pain in his back was severe. He could not sit or stand straight, and walking hurt. He rated his pain as 9/10. To help relieve the pain, Crowder would take Vicodin, take a shower, or lay on a heating pad. Crowder estimated that he would spend 80% of his day on the heating pad. (Tr. 299-300.)

Walking, sitting, and driving caused specific pain. Crowder estimated that he could sit for no longer than fifteen minutes before the pain would start up. He estimated he could walk for no more than fifty feet without experiencing pain. The drive to the hearing, he noted, "was a killer." Crowder said he was now taking six doses of Vicodin a day, Neurontin, and Ambien to help him sleep.[17] (Tr. 300-04.)

Crowder explained he did very little in a typical day. He would tend to his chickens outside, but the majority of his day was spent inside. Crowder did not think he could return to his dispatching job because of his inability to sit for prolonged periods and the inability to lay down on the job. (Tr. 305-07.)

Crowder also discussed the injury to his right elbow, which occurred in January 1995. The injury to his elbow required surgery, and since the injury, Crowder has no feeling in two fingers. Crowder stated he would lose his grip and sometimes get a burning sensation in his hand. (Tr. 295-96.)

---

[16](...continued)
drugs. (Last visited December 30, 2007.)

[17]Neurontin is used to control seizures and to relieve nerve pain in adults. http://www.webmd.com/drugs. (Last visited January 3, 2007).

### III. DECISION OF THE ALJ

On February 21, 2006, the ALJ found Crowder was not disabled within the meaning of the Social Security Act. (Tr. 19-20.) The ALJ began by summarizing the relevant medical history, which is substantially similar to the history outlined above. (Tr. 12-15.) In light of his medical history, the ALJ found Crowder had impairments of degenerative disc disease of the lumbar spine and persistent right ulnar tardy palsy. In combination, the ALJ found these impairments to be severe. (Tr. 15.) Although his ailments were severe, the ALJ did not find Crowder's allegations of symptoms completely credible and did not believe Crowder's symptoms precluded all work. (Tr. 15.)

The ALJ first discussed Crowder's elbow surgeries in 1995. Despite these injuries, Crowder worked from 1996 until 2003. Since he worked with the impairment in his elbow, the ALJ concluded that any condition in Crowder's right elbow was not so disabling as to prevent future work activity. (Tr. 15-16.)

The ALJ also discounted Crowder's complaints of back pain. The ALJ believed that clinical evidence suggested Crowder's back pain was not as limiting as he claimed it to be. In his evaluation, Dr. Coyle, a spine surgery specialist, found no atrophy in Crowder's calves or quadriceps, and no sensory or motor deficits distal to Crowder's knees. According to the ALJ, "[o]ne would expect some atrophy and/or sensorimotor deficits if the claimant's condition were really as severe as he has alleged." In addition, the ALJ noted how Dr. Coyle did not find any evidence of nerve root compression and how he recommended continuing a conservative line of treatment, rather than pursuing surgery. (Tr. 16.)

The ALJ pointed to other reasons for discounting Crowder's complaints of back pain. On November 2, 2004, Steven Brunjes of ProRehab, believed that Crowder was exaggerating some of his symptoms. A week later, Dr. Wayne, a treating physician, also found that Crowder was able to do more than was reflected in his functional capacity evaluation. (Tr. 16.)

The ALJ discounted the claimant's reports of breathing problems. Crowder never mentioned breathing difficulties to medical professionals,

only to Lalk. In addition, there was no evidence he had ever been treated for respiratory problems. Finally, Crowder reported smoking three-quarters of a pack of cigarettes, a day. This behavior, the ALJ reasoned, indicated Crowder's breathing complaints were exaggerated. (Tr. 17.)

Finally, the ALJ discounted Crowder's allegations concerning his daily limitations. Crowder had testified that he could not sit or stand without being in pain, and that his pain became severe after only a half-hour of sitting. Nonetheless, the ALJ noted that Crowder had reported driving himself to the hearing, an 80-mile trip each way. Accordingly, the ALJ found Crowder's sitting limitations exaggerated. Crowder also testified that his wife performed the heavy chores around the house. But since Crowder's wife was receiving Social Security disability for chronic obstructive pulmonary disease, the ALJ found this testimony doubtful. (Tr. 17-18.)

Based on these findings, the ALJ discounted the opinion of Mr. Lalk. Lalk based his vocational assessment on Crowder's subjective descriptions of his current activity and symptoms. But since these symptoms were exaggerated, the ALJ believed Lalk's report should be discounted. The ALJ also believed Lalk's report deserved less weight because Lalk had seen Crowder on only one occassion, and was referred by Crowder's attorney. Dr. Wayne, on the other hand, had treated Crowder for an extended period. Finally, the ALJ expressed skepticism toward Lalk's credentials, noting there was no evidence he had any degree or training for the field in which he claimed to work. (Tr. 16-17.)

The ALJ also discounted the April 2005 report of Dr. Schuetz. Dr. Schuetz had seen Crowder in May and June 2004, for abdominal muscle and back pain, and prescribed Vicodin. Dr. Schuetz did not perform any tests during those two visits. After those two visits, Dr. Scheutz did not see Crowder again, until writing the April 2005 report. Based on this limited treatment, the ALJ discounted Dr. Scheutz's report. (Tr. 17.)

After reviewing the entire record, including the clinical and objective findings, and Crowder's own testimony, the ALJ concluded that

Crowder retained the capacity to perform work which would involve lifting up to twenty pounds, with no frequent lifting or carrying in excess of ten pounds. The ALJ concluded Crowder could perform work requiring a good deal of walking or standing, approximately six hours off and on, during an eight-hour work day. Crowder could perform "light" work, the ALJ concluded. Since Crowder was a dispatcher from February 2001 until September 2002, and the position did not require the ability to perform more than sedentary work, the ALJ found Crowder's impairments did not prevent him from performing his past relevant work. As a result, the ALJ concluded Crowder was not disabled within the meaning of the Social Security Act. (Tr. 18-19.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A). A five-step regulatory framework governs the evaluation of disability in general. See 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that

a claimant is disabled or not disabled at any step, a decision is made and the next step is not reached. 20 C.F.R. § 404.1520(a)(4).

Here, the Commissioner determined that Crowder maintained the residual functional capacity (RFC) to perform light work, and could perform his past relevant work. The burden remains on the plaintiff to prove he is unable to perform his past relevant work. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).

# V. DISCUSSION

Crowder argues the ALJ's decision is not supported by substantial evidence. Specifically, Crowder argues the ALJ failed to give appropriate weight to his subjective limitations and complaints of pain. He also argues the ALJ failed to give appropriate weight to the expert testimony of Timothy Lalk and Hugh Scheutz, and failed to call on a vocational expert. Finally, Crowder argues the ALJ erred by substituting his own medical opinion and drawing improper conclusions from the medical evidence presented at the hearing. (Doc. 10.)

## Subjective Complaints

The ALJ must consider the claimant's subjective complaints. Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). In evaluating subjective complaints, the ALJ must consider the objective medical evidence, as well as the so-called Polaski factors. Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005). These factors include: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of the claimant's pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness, and side effects of medication; and 5) functional restrictions. Id. That said, the ALJ does not need to recite and discuss each of the Polaski factors in making a credibility determination. Casey, 503 F.3d at 695. The ALJ may discount subjective complaints of pain, when the complaints are inconsistent with the evidence as a whole. Id. When rejecting a claimant's complaints of pain, the ALJ must "detail the reasons for discrediting the testimony and set forth the inconsistencies found." Guilliams, 393 F.3d at 802.

When the ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the reviewing court "will normally defer to the ALJ's credibility determination." Casey, 503 F.3d at 696.

In this case, the ALJ detailed the reasons he discounted Crowder's subjective complaints of pain. First, the ALJ found the clinical evidence demonstrated Crowder's impairments were not so limiting as to preclude all work. Second, the ALJ noted that several examiners believed Crowder was exaggerating his symptoms. Third, the ALJ noted that some of Crowder's daily activities contradicted his subjective complaints of pain.

Substantial evidence supports these conclusions. Dr. Andrew Wayne, M.D., saw Crowder on at least ten different occasions, from June 8, 2004, to November 9, 2004. After several of these visits, Dr. Wayne cleared Crowder to return to work. Specifically, Dr. Wayne believed Crowder was capable of light duty, which included lifting up to twenty pounds, and pulling or pushing up to forty pounds. Dr. Wayne found Crowder's range of motion was only mildly limited, and spinal x-rays revealed no acute abnormalities and no significant degenerative abnormalities. Crowder's alignment appeared to be within normal limits. See Guilliams, 393 F.3d at 802 (The ALJ properly discounted claimant's complaints where an MRI revealed largely normal alignment and curvature of the spine.). Finally Dr. Wayne believed Crowder was showing some "evidence of symptoms magnification and self-limiting behavior."

Other examiners shared Dr. Wayne's opinion. Steven Brunjes, a registered and licensed occupational therapist, found Crowder's subjective complaints were out of proportion with his displayed abilities, and believed Crowder might be guilty of "symptom magnification." L. Masek, a medical consultant, found Crowder only "partially credible," believing the constant pain alleged, to be "beyond what would be expected from the objective findings."

Dr. James Coyle, M.D., a spinal surgeon, did not see any evidence of neurological deficits or nerve root impingement on an MRI he reviewed. In light of this evidence, he recommended pursuing a conservative line of treatment, against surgery. Even Dr. Hugh Schuetz, D.O., who concluded Crowder could not work for medical reasons, believed

-17-

Crowder was capable of lifting up to twenty pounds occasionally, and carrying up to ten pounds occasionally.

Looking to the record as a whole, there is substantial evidence to support the ALJ's decision to discredit Crowder's subjective complaints of pain.

**Weighing Expert Testimony**

The ALJ has the role of resolving conflicts among the opinions of various treating and examining physicians. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). The ALJ may reject the conclusions of any medical expert, whether hired by the government or the claimant, if they are inconsistent with the record as a whole. Id. Normally, the opinion of the treating physician is entitled to substantial weight. Casey, 503 F.3d at 691. On the other hand, the opinion of a consulting physician, who examines a claimant once, or not at all, generally receives very little weight. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).

Still, the opinion of the treating physician is not conclusive in determining disability status, and must be supported by medically acceptable clinical or diagnostic data. Casey, 503 F.3d at 691. The ALJ may credit other medical evaluations over the opinion of a treating physician, when the other assessments are supported by better or more thorough medical evidence. Id. at 691-92. In determining how much weight to give a treating physician's opinion, the ALJ must consider the length of the treatment relationship and the frequency of examinations. Id. at 692.

In this case, the ALJ discounted the opinions of Timothy Lalk and Dr. Schuetz. The ALJ found Lalk's opinions relied heavily on Crowder's previously discounted subjective complaints. The ALJ also noted there was no evidence Lalk had any degree or training for the field in which he claimed to work. In discounting Dr. Schuetz's opinions, the ALJ noted Dr. Schuetz had not performed any tests on Crowder, and that Crowder's visits to Dr. Schuetz were separated by at least nine months.

Substantial evidence supports the ALJ's decision to discredit the opinions of Timothy Lalk and Dr. Hugh Schuetz. Lalk observed Crowder

one time, on May 31, 2005.  He did not perform any tests, but merely
reviewed the medical evidence, observed Crowder, and listened to
Crowder's subjective complaints.  Based on this one-time examination,
Lalk concluded Crowder could not "secure and maintain employment in the
open labor market nor could he compete for any position."  Yet, Lalk
also noted that, if one credited the opinions of Dr. Wayne, the treating
physician, Crowder could perform a full range of jobs.

As the ALJ noted, there is no evidence of Lalk's qualifications.
He describes himself as a "vocational rehabilitation counselor," but
there is no clear indication of what this means.  There is no indication
Lalk is registered or licensed in any capacity, nor is there any
indication Lalk has training or an educational background in the
relevant medical or vocational fields.  Lalk's one-time examination
provided little more than a simple conclusion regarding Crowder's work
ability.

Dr. Schuetz saw Crowder on May 27, 2004, and not again, until April
14, 2005.  On April 14, 2005, Dr. Schuetz concluded that Crowder should
not work for medical reasons.  Yet, at the same time, Dr. Schuetz
believed Crowder could lift up to twenty pounds, and carry up to ten
pounds, albeit occasionally.  During the examination on April 14, 2005,
Dr. Schuetz did not perform any tests or check Crowder's range of
motion.

In contrast, Dr. Wayne saw Crowder no fewer than ten times, from
June 8, 2004, to November 9, 2004.  During this period of treatment, Dr.
Wayne examined x-rays and MRIs of Crowder's back.  Dr. Wayne also
conducted numerous physical examinations to test Crowder's range of
motion.  Dr. Wayne referred Crowder to physical therapists and arranged
for a surgical consultation.  Looking to the record as a whole, the ALJ
properly discounted the opinions of Timothy Lalk and Dr. Hugh Schuetz,
in favor of the opinions of Dr. Andrew Wayne.  See Casey, 503 F.3d at
691; Singh, 222 F.3d at 452.

Crowder argues the ALJ erred by failing to call on a vocational
expert.  However, the ALJ has no duty to call a vocational expert where
the claimant has failed to prove he cannot perform his past relevant
work.  Lewis v. Barnhart, 353 F.3d 642, 648 (8th Cir. 2003); Roe v.

<u>Chater</u>, 92 F.3d 672, 675 (8th Cir. 1996) ("The testimony of a VE is required only when the claimant carries his initial burden of showing that he is incapable of performing past relevant work and the claimant has a nonexertional injury.").

**Medical Conclusions**

The RFC is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence. <u>Casey</u>, 503 F.3d at 696. The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and the like, and the claimant's own descriptions of his limitations. <u>Pearsall</u>, 274 F.3d at 1217-18. Before determining a claimant's RFC, the ALJ must evaluate the claimant's credibility. <u>Id.</u> Ultimately, the RFC is a medical question, which must be supported by medical evidence contained in the record. <u>Casey</u>, 503 F.3d at 697.

In this case, substantial evidence in the record supports the ALJ's finding that Crowder could perform light work. Dr. Wayne examined Crowder on numerous occasions, finding Crowder suffered from disk herniation and degenerative disk disease. Yet, in his opinion, Crowder was still capable of performing light work, which included lifting up to twenty pounds. On numerous occasions, Dr. Wayne cleared Crowder to return to work - just so long as it was light or sedentary work.

Other examiners also believed Crowder was capable of light work. Robin Pickup, a physical therapist, found Crowder was tolerating increased range of motion. In fact, her notes indicate Crowder had been working light duty. Steven Brunjes, an occupational therapist, believed Crowder could work, full-time, in at least a sedentary position. Finally, according to an RFC assessment by Masek, a medical consultant, Crowder could occasionally lift or carry twenty pounds, and could frequently lift ten pounds. He believed Crowder could stand, walk, or sit, with normal breaks, for about six hours in an eight-hour workday. Based on the evidence in the record, substantial evidence supports the ALJ's determination that Crowder was capable of performing light work.

In his brief, Crowder objects to the ALJ's statement that, "[o]ne would expect some atrophy and/or sensorimotor deficits if the claimant's condition were really as severe as he has alleged." This statement, he contends, was an improper medical conclusion. The ALJ may not draw upon his own inferences and may not substitute his opinions for those of physicians. <u>Shontos v. Barnhart</u>, 328 F.3d 418, 427 (8th Cir. 2003); <u>Ness v. Sullivan</u>, 904 F.2d 432, 435 (8th Cir. 1990). With all due respect to his experience, this statement may have exceeded the ALJ's qualifications and may have been improper. At the same time, this one statement was not critical to the ALJ's conclusions. As noted above, the ALJ properly determined Crowder's RFC, properly weighed the expert testimony, and properly evaluated the claimant's subjective complaints. This one statement, assuming it was improper, does not detract from these determinations. <u>See</u> <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1149 (8th Cir. 2001) ("Any arguable deficiency . . . in the ALJ's opinion-writing technique does not require [the reviewing] Court to set aside a finding that is supported by substantial evidence.")

## VI. RECOMMENDATION

For the reasons set forth above, it is the recommendation of the undersigned that the decision of the Commissioner of Social Security be affirmed under Sentence 4 of 42 U.S.C. § 405(g).

The parties are advised that they have ten days to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.


<u>    /S/ David D. Noce    </u>
**UNITED STATES MAGISTRATE JUDGE**


Signed on January 9, 2008.